UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CASEY FLEMING, ROBERT KING, and KEVIN CARBONNEAU,<br><br>                    Plaintiffs,<br><br>     v.<br><br><br>TOWN OF OXFORD, ROBERT LANCIANI, individually and in his official capacity, ALISON NOVAK, individually and in her official capacity, KATHLEEN FLYNN, individually and in her official capacity, ALFRED BANFILL, individually and in his official capacity, KENNETH SELLERS, individually and in his official capacity, LAURENT MCDONALD, individually and in his official capacity, RIKE STERRETT, individually and in his official capacity, JENNIFER CALLAHAN individually and in her official capacity, and JENNIFER WARREN-DYMENT individually and in her official capacity, and ROBERT SMALL,<br><br>                    Defendants. | CIVIL ACTION NO. 23-CV-40081<br><br>**Leave to File Granted on Oct. 26, 2023 (ECF 16)** |

**FIRST AMENDED COMPLAINT**

PRELIMINARY STATEMENT

1.      Since 2015, Casey Fleming and Kevin Carbonneau have operated an online

business known as HereBDragons, from their home. As part of their business Mr. Fleming and

Mr. Carbonneau breed bearded dragons and sell them to online purchasers. When Mr. Fleming

and Mr. Carbonneau, along with Robert King (collectively "Plaintiffs") purchased their home

located at 59 Quobaug Avenue in Oxford, Massachusetts (the "Home") in June of 2018, they

began operating HereBDragons out of the Home. As part of their house-hunting process,

Plaintiffs reviewed the Town of Oxford's zoning bylaws to confirm they could continue to run

their business as an at-home business from 59 Quobaug Avenue. In early 2021, Plaintiffs hired Robert Small, a home contractor, to make improvements to the Home. While working at the Home in or around February of 2021, Mr. Small became irate and walked off the job while spewing hateful rhetoric and homophobic slurs directed at Plaintiffs as he stormed away. Shortly thereafter, Mr. Small filed a false complaint with the Oxford Board of Health, in which he made certain false allegations and fabricated various health and safety violations he claimed to have seen while working at the Home. Based on Mr. Small's spurious, false, and wholly baseless report, the various municipal defendants, at times acting individually and at times acting in concert, launched a harassment campaign against Plaintiffs that has included multiple forced inspections and re-inspections of the Home, the issuance of multiple cease and desist orders, multiple orders to correct conditions at the Home, repeated invasions of Plaintiffs' privacy and intrusions into their private lives, and interference with the quiet enjoyment of their Home – all without any legitimate basis or legal justification. Due to the actions of the various defendants, Plaintiffs have been injured and suffered embarrassment, public ridicule, reputational harm, emotional distress, and have been damaged economically as their business has suffered as a direct result of the defendants' actions.

PARTIES

2.     Plaintiff Casey Fleming is an individual residing in Oxford, Worcester County, Massachusetts 01540.

3.     Plaintiff Kevin Carbonneau is an individual residing in Oxford, Worcester County, Massachusetts 01540.

4.     Plaintiff Robert King is an individual residing in Oxford, Worcester County, Massachusetts 01540.

5.      Defendant, Town of Oxford, is a municipal corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, located at 325 Main Street, Oxford, Worcester County, Massachusetts 01540.

6.      Defendant, Robert Lanciani, former Oxford Building Commissioner, is an individual residing at 237 Worcester Road, Sterling, Worcester County, Massachusetts 01545.

7.      Defendant Alison Novak, former Oxford Director of Public Health, is an individual residing at 10 Brookwood Drive, Johnston, Rhode Island, 02919.

8.      Defendant Kathleen Flynn, Oxford Animal Control Officer, is an individual residing at 34 Douglas Road, Sutton, Worcester County, Massachusetts 01590.

9.      Defendant Alfred Banfill, Oxford Inspector of Wires, is an individual residing at 19 Maid Marion Street, Oxford, Worcester County, Massachusetts 01540.

10.     Defendant Kenneth Seller, Oxford Fire and Emergency Services Deputy Chief, is an individual residing at 223 Ramshorn Road, Dudley, Worcester County, Massachusetts 01540.

11.     Defendant Jennifer Callahan, Oxford Town Manager, is an individual residing at 3 Wheelock Street, Oxford, Worcester County, Massachusetts 01540.

12.     Defendant Jennifer Warren-Dyment, former Oxford Assistant Town Administrator, is an individual whose residential address is unknown, but whose current principal place of business located at 140 Worcester St., West Boylston, Massachusetts, 01583.

13.     Defendant Laurent McDonald, Oxford Fire Chief, is an individual residing at 8 Thayer Pond Drive, Unit 6, North Oxford, Worcester County, Massachusetts 01537.

14.     Defendant Robert Small, is an individual residing at 10 Mossman Road, Westminster, Worcester County, Massachusetts 01473.

15.     Defendant Rike Sterrett, Oxford Director of Public Health, is an individual residing at 137 Rochambeau Avenue, Unit 3, Providence, Providence County, Rhode Island, 02906.

## JURISDICTION AND VENUE

16.     This action is brought pursuant to 42 U.S.C. § 1983 and Massachusetts law to redress the Defendants' tortious conduct and their deprivation of Plaintiffs' rights secured by the U.S. Constitution, the Massachusetts Constitution, and Massachusetts law.

17.     This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

18.     This Court has supplemental jurisdiction over Plaintiffs' state constitutional and statutory claims pursuant to 28 U.S.C. § 1367. Plaintiffs' state-law claims are closely related to Plaintiffs' federal claims.

19.     Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2) because Plaintiffs reside in Massachusetts and the events giving rise to the complaint took place in Massachusetts.

## FACTS AND ALLEGATIONS

**Plaintiffs Move To Oxford And Operate The Business Without Issue**

20.     In 2018, Plaintiffs were actively seeking to purchase a house in which they could live and from which they could operate the Business.

21.     Before submitting an offer to purchase the Home, Plaintiffs reviewed Oxford's then-current zoning bylaws and determined that under Oxford's bylaws, they were allowed to operate the Business from their Home as of right.

22.     In June of 2018, Plaintiffs purchased the Home and began operating their at-home Business in July 2018.

4

23.     Upon information and belief, the Town, its Building Commissioner Robert Lanciani ("Lanciani") and its Inspector of Wires Alfred Banfill ("Banfill") were aware of the operation of the Business since at least 2019.

24.     At all times subject to this complaint, Plaintiffs owned each Bearded Dragon at the Home and the business was exempt from licensure as a Pet Shop under M.G.L. c. 129, §39A.

### Home Renovations and Municipal Inspections

25.     Plaintiffs devote substantial time and energy into operating the Business and take abundant precautions to provide for the safety and well-being of their Bearded Dragons.

26.     As operators of the Business, Plaintiffs breed and care for the animals until they are mature enough to be sold to new owners.

27.     Plaintiffs own every Bearded Dragon under their care. Neither as part of the Business nor in their personal capacities do Plaintiffs accept Bearded Dragons owned by others into their Home or otherwise care for Bearded Dragons belonging to others.

28.     After moving into the Home in 2018, Plaintiffs decided to perform certain renovations, particularly to the garage.

29.     These renovations were motivated and designed to increase and improve Plaintiffs' ability to care for their Bearded Dragons.

30.     Plaintiffs handled some aspects of the renovations themselves and hired contractors to perform other parts.

31.     In 2019, while the renovations were underway, Lanciani and Banfill inspected the Home.

32.     During their inspections, Lanciani and Banfill inspected the garage area and observed the at-home Business in active operation.

5

33. After his inspection, Banfill told Lanciani and Plaintiffs that the wiring was installed lawfully and did not require any electrical permits.

34. After completing his inspection of the Home, Lanciani issued Plaintiffs' a building permit allowing them to close up the walls by installing insulation and drywall.

35. The renovations stalled during the Covid-19 epidemic and Plaintiffs could not engage contractors to adequately staff the job to finish the work.

36. Ultimately, the renovations were put on hold through February of 2021.

**Plaintiffs Hire Robert Small to Complete the Renovations**

37. In late January of 2021, Plaintiffs hired Robert Small, a home contractor, to complete the renovations. The agreed cost of the renovations exceeded $1,000.00.

38. Plaintiffs are each same-sex oriented adult males.

39. Mr. Small became aware of Plaintiffs' sexual orientation as a result of his work at the Home.

40. While working at the Home in or around February of 2021, Small became irate and walked off the job while spewing hateful rhetoric and homophobic slurs directed at Plaintiffs as he stormed away.

41. Mr. Small offered Plaintiffs the pretextual excuse that he quit without finishing the contracted for work, because of a disagreement with the Plaintiffs as to the location of a ceiling fan.

42. After walking off the job, Small attempted to extort Plaintiffs.

43. Small demanded Plaintiffs pay him money and, in exchange, he would not file phony complaints with the Town's various administrative boards.

44.     Small also threatened to have the Business shut down if Plaintiffs did not cower to his threats and pay him the money he demanded.

45.     Small further attempted to intimidate and cause Plaintiffs fear by boasting about a dental office that he did contracting work at, which had a permitting issue that caused the business to shut down.

46.     Small is not registered in the Commonwealth as a Home Improvement Contractor and does not hold a contractor's license, despite purporting to being insured.

47.     After Plaintiffs refused his monetary demands, Small stormed away and storming called the Town's Board of Health to falsely report that he observed numerous health and safety violations when he was at the Home (the "Small Report").

48.     Upon information and belief, Small also called the Building Department to report bogus building code violations he purportedly observed at the Home.

49.     The secretary who received the Small Report documented and emailed it to Novak and Lanciani.

50.     Small knowingly made these false reports intending to harass Plaintiffs because he knew that the Town would respond by sending various inspectors and officials to the Home.

51.     Even though it was completely false and wholly fabricated, the Small Report was effective in causing various municipal officials to inspect the Home and provided cover for the campaign of harassment Plaintiffs have suffered by the hands of the Town's inspectors.

**Lanciani Fraudulently Obtains An Administrative Search Warrant And
Various Municipal Officials Inspect the Home**

52.     As a result of the baseless Small Report, and without performing any investigation of his own, Lanciani sent Plaintiffs a cease and desist letter.

7

53.     On or about February 26, 2021, Plaintiffs complained about Lanciani's cease and desist letter to the Oxford Board of Selectmen, which included a description of Small's conduct and statements described above, and was accompanied by a records request for the Town's records related to the Small Report.

54.     Warren-Dyment was the records access officer that handled the request.

55.     Warren-Dyment finally responded to Plaintiff's record's request on March 25, 2021, even though by law she needed to respond within 10 business days.

56.     On or about March 3, 2021, Lanciani called Plaintiffs to request access to the Home at 10:00 AM the next morning, when he had arranged for various Town inspectors and officials to inspect the Home.

57.     Plaintiffs told Lanciani that they were not available for inspection on such short notice and asked whether the inspection could be rescheduled to a mutually-agreeable day and time.

58.     Instead of working cooperatively with Plaintiffs to schedule the inspection, Lanciani responded aggressively, repeatedly asking the Plaintiffs if he was being denied access to the property and implying that he would seek an administrative search warrant to enter the home.

59.     Plaintiffs were taken aback by Lanciani's aggressive response and display of open hostility towards them.

60.     Lanciani's demand for immediate access to the Home was wholly unnecessary and unjustified.

61.     Rather than engage with an overly aggressive Lanciani, Plaintiffs attempted to discuss his conduct with the Town's Board of Selectmen.

62.     However, Plaintiffs' calls to the Town's Board of Selectmen were intercepted by Jennifer Callahan ("Callahan"), Town Manager.

63.     Callahan told Plaintiffs that the Board of Selectmen would not return Plaintiffs' calls. Callahan also falsely told Plaintiffs that the Board of Selectman had no jurisdiction over municipal administrative matters involving the conduct of municipal employees such as Lanciani.

64.     Rather than subjecting themselves to Lanciani's combativeness, Plaintiffs attempted to directly contact the various Town departments by letters sent via certified mail.

65.     In those letters, Plaintiffs expressed their willingness to schedule any necessary inspections of the Home.

66.     For instance, Plaintiffs amicably coordinated Defendant Alison Novak's ("Novak") inspection of the Home on March 8, 2021.

67.     Without Plaintiffs' authority or permission, Novak photographed the interior of the Home during her inspection.

68.     Primarily, Novak photographed the interior, personal spaces of the Home.

69.     Subsequently, Novak caused these photographs to be published to the public when she incorporated them into a public document.

70.     Upon the completion of her inspection, Novak told Plaintiffs that she did not find any code violations or other indications of any insect infestation.

71.     The Town's Animal Control Officer, Kathleen Flynn ("Flynn") also contacted the Plaintiffs to schedule an inspection.  She requested Plaintiffs schedule a time for her to inspect the Home to allow her to determine whether Plaintiffs were required to obtain a special permit to operate the Business from their Home.

72.     Because the question of whether a special permit is required for Plaintiffs to operate their Business is well outside the scope of Flynn's official duties, her request for an inspection to do so far exceeds her authority.

73.     On or about March 23, 2021, Lanciani petitioned Dudley District Court for an administrative warrant to inspect the Home.

74.     Despite indicating to Plaintiffs that there were no code violations, Novak assisted Lanciani in seeking the administrative warrant.

75.     Further, pursuant to the law and regulations of the Commonwealth of Massachusetts, Lanciani had no authority to apply for an administrative warrant unless he was first denied access to the Home, which had not occurred.

76.     In support of his petition, Lanciani filed an affidavit attesting under oath to purported facts he knew were false, including, but not limited to:

a.  "On or about February 18, 2021, the Building Department received a complaint alleging unsanitary conditions at the Property including insect infestation, the keeping and sale of exotic animals (bearded lizards), and other conditions dangerous to the health and safety of the occupants, general public, abutters and first responders, including but not limited to exposed electrical wire and electrical cords, as well as the presence of numerous space heaters and space lamps (believed to be for the lizards)."

b.  "…I attempted to inspect the Property and I was denied access."

c.  "[Plaintiff] admit[ted]…he employed an unlicensed contractor to perform work under the building permit."

d.  "…[Plaintiff] refused to grant me access."

e.  "...[Plaintiff] admitted to the Director of Public Health Services that he undertook the electrical work in the basement himself without proper licensing or a proper permit, raising immediate concern regarding the likelihood of an electrical fire in the residential neighborhood were the Property is located."

77.     Lanciani knew these statements were false at the time he signed the affidavit.

10

78.     Moreover, Lanciani knew that he would not be granted the administrative warrant if he were truthful in his affidavit to the Court.

79.     Lanciani applied for the administrative warrant for the purpose of harassing Plaintiffs and causing them distress.

80.     On or about March 23, 2021, Lanciani, along with Novak, Sellers, Banfill, and Flynn, and other unnamed employees of the Town of Oxford, acting under the color of law pursuant to the fraudulently obtained Administrative Search Warrant, entered, searched, inspected, and photographed the Home.

81.     Throughout the inspection, Lanciani verbally taunted Plaintiffs by stating that he issued the original building permit knowing that Plaintiffs could never close the permit due to the existence of "unpermitted"-but legal- electrical wiring.

82.     During this inspection, Lanciani:

   a. Told Plaintiffs he did not need to make an appointment because the Administrative Search Warrant was "his appointment.";
   b. Told Plaintiffs he had the power to arrest Plaintiffs if he was not given immediate access to the Home;
   c. Waived his cell phone in front of Plaintiffs indicating that he was prepared to call the police immediately;
   d. Referred the building permit he previously issued as putting Plaintiffs in a "Catch-22" because he never intended to approve the work due to his belief that the electrical work was not permitted, even though Banfill previously told him that the wiring was legal and that no permit was needed for the electrical work.

83.     The search of the Home exceeded the scope of the warrant and included the entirety of the Home, including bedrooms, bathrooms, kitchen, and living spaces.

84.     These areas of the Home were unrelated to any alleged code violations.

85.     During the inspection, Defendants photographed of the interior of the Home, including private rooms and spaces. These photos did not include any alleged code violations.

86.     The administrative search warrant did not authorize the inspecting defendants to

access, inspect, or photograph these personal, private spaces in the Home.

87.     Defendants only reason for accessing and photographing these personal, private

spaces was to harass Plaintiffs and to cause them embarrassment.

88.     Defendants later caused these photographs to be published to the public.

89.     The photographs are still publicly accessible.

**Defendants Demand Plaintiffs Cease And Desist The Business
With Administrative Orders**

90.     After the inspection, Banfill, Lanciani, Sellers, Novak, and Flynn served Plaintiffs

with orders to correct various purported violations of Oxford Zoning By-Laws, state statutes,

state sanitary cords, building codes, state fire codes, and electrical codes.

91.     The orders to correct were served after 5:00pm, on Friday, April 2, 2021 – Good

Friday.

92.     The orders to correct directed Plaintiffs to immediately remove all animals at the

Home, which were the pets of Plaintiffs and integral to the running of the Business.

93.     To further harass Plaintiffs and to interfere with and prevent them from

conducting a lawful business from their the Home, Banfill, Lanciani, Sellers, Novak, and Flynn

issued orders to correct that were based on fabricated conditions and violations of non-applicable

parts of Oxford Zoning By-Laws, state statutes, state sanitary code, building codes, fire codes,

and electrical codes.

94.     For example, no fuel powered space heaters were present at the Home at the time

of the March 23, 2021 inspection, even though Novak claimed there were none.

95. Despite the absence of any fuel powered space heaters, Plaintiffs were cited for violating CMR 410.200B, 202, which establishes proper ventilation of fuel powered space heaters.

96. Plaintiffs appealed Novak's citation but received no response and the Board of Health took no action.

97. Moreover, the orders issued by Lanciani, Sellers, Novak, and Flynn each made baseless attacks on the Plaintiffs' possession of their animals, which they knew to be integral to the Business.

98. Sellers demanded Plaintiffs remove all animals from the property.

99. As the Deputy Fire Chief, Sellers had no power to demand Plaintiffs remove all animals from their property. Sellers's demand to Plaintiffs exceeded the scope of his authority.

100. Without any basis in fact, Flynn criminally cited Plaintiffs for animal abuse.

101. Plaintiffs appealed a zoning order by Lanciani to the Zoning Board of Appeals.

102. During the Zoning Board of Appeals hearings, Lanciani, Novak, and Banfill made various material and false statements concerning Plaintiffs and the Business including, but not limited to:

   a. false and unsubstantiated claims that the Business would spread salmonella;
   b. claiming that Plaintiffs' kitchen, dining room and basement contained no personal affects and were exclusively for the use of the business; and
   c. claiming that the garage was insulated and plastered without a permit.

103. Moreover, during this hearing Lanciani and Novak admitted that claims made in their orders to the Plaintiffs were false.

104. Novak further claimed to have written a "report" of her March 8, 2021 inspection, which she could not produce during the hearing.

13

105.    Plaintiffs later obtained this report, which turned out to be a cease and desist order. Upon information and belief this order was written by Novak after the Zoning Board of Appeals hearing.

106.    On or about February 10, 2022, the Home was re-inspected by Defendants McDonald, Sellers, Banfill, Sterritt, and other unnamed agents of the Town of Oxford. This access was obtained through discovery in Land Court proceedings in which Plaintiffs were appealing Lanciani's zoning order. Defendants purportedly were there to resolve and close out the April 2, 2021 orders.

107.    In the days leading up to the February 10, 2022, inspection, Plaintiffs reminded the inspecting defendants that their inspection was subject to a confidentiality agreement being drafted between the parties and their counsel, and that they should not enter or photograph private areas of the Home. Plaintiffs allowed the inspection upon the expressed understanding that the confidentiality agreement would be completed and defendants would sign it.

108.    Despite Plaintiffs' protestations and Defendants' assurances that the scope of the February 10, 2022, inspection would be limited, they again illegally entered and photographed Plaintiffs' personal, private spaces without permission, excepting only the bedrooms.

109.    Defendants undertook this action, even though they knew of Plaintiffs complaints and concerns regarding such conduct, to continue to harass Plaintiffs.

110.    Following this inspection the Defendants denied having ever agreed to complete and sign a confidentiality agreement and Callahan instituted a policy that all photos and records of Plaintiffs' property would be publicly available.

111.    Based on their observations during the February 10, 2022 inspection, Sterrett, Banfill, and Sellers issued further orders to correct that, again, contained falsehoods, were not

14

supported by the conditions of the Home during the inspection, and cited violations of inapplicable regulations.

112.    Plaintiffs appealed Sterrett's March 5, 2022 orders to correct to the Oxford Board of Health, which held hearings on April 6 and April 14, 2022.

113.    During the hearings, Plaintiffs were outrageously attacked by the Town's counsel. Given that the subject of Sterrett's orders and Plaintiffs' appeal largely focused on how to categorize electric cables in the garage, Plaintiffs were shocked when Town counsel told the Board of Health, "I think you could do the death penalty."

114.    In her testimony to the board, Sterrett made various false and misleading statements, such as alleging that a nuisance odor emanated from the Home and that the Home is electrically overloaded, which she provided no evidence to support.

115.    Plaintiffs also appealed Banfill's March 16, 2022 order to correct to the Board of Electricians' Appeals.

116.    A hearing was held on the matter on April 25, 2022.

117.    The board issued its ruling on June 23, 2022, overturning Banfill's March 16, 2022 orders to correct.

118.    On or about April 11, 2022, Chief McDonald sent Plaintiffs additional orders to correct.

119.    Despite the order to correct being dated two months after the inspection, McDonald alleged certain code violations observed during the February 20, 2022 inspection "posed a serious and imminent safety risk."

120.    As they were forced to do for the March 5, 2022 Sterrett order and the March 16, 2022 Banfill order, Plaintiffs promptly appealed McDonald's April 11, 2022 order to the Fire Prevention Regulations Appeals Board.

121.    In response to Plaintiffs exercising their right to appeal his unlawful order to correct, McDonald retaliated against Plaintiffs by subjecting them to unscrupulous and abusive legal tactics solely intended to harass, intimidate, and pressure Plaintiffs into dropping their appeal.

122.    McDonald's response to Plaintiffs' appeal consisted of 321 pages of material wholly irrelevant, unresponsive, and unrelated to the issues on appeal, including:

    a.  Plaintiffs' notice to Town of Oxford of intent to file the present tort Complaint;
    b.  Plaintiffs' appeal of Lanciani's zoning order;
    c.  Plaintiffs' social media posts related to their personal and business lives; various websites concerning Plaintiffs' business including positive reviews, marketing materials, and Plaintiffs' bearded dragon care guide.

123.    As part of his 321-page response, McDonald produced Plaintiffs' social media posts related to their personal and business lives, which were entirely irrelevant to the proceedings before the board.

124.    Further, McDonald submitted numerous photos of Plaintiffs' property from both inspections, declaring them to be public information.

125.    None of this material submitted by McDonald was remotely related to determining if cords at the Plaintiffs' property were extension cords and used in violation of the fire code as McDonald alleged.

126.    McDonald further argued that the Plaintiffs' zoning dispute, and Banfill's electrical order which by this point had been overturned, were reasons to uphold McDonald's fire code order.

127.    Further, throughout the appeal McDonald continuously argued new claims and alternative theories.

128.    Moreover, McDonald testified falsely under oath including claiming that certain items at Plaintiffs' property were "blue extension cords" and "orange extension cords".

129.    In response to McDonald's false statements the Plaintiffs provided photos proving that the items were in fact cat-6 data cable, and a home heating oil supply line which connects their oil tank to their home furnace.

130.    These were bad faith litigation strategies by McDonald intended to harass and intimidate the Plaintiffs and waste their time fighting frivolous and false claims.

131.    On or about December 19, 2022, the Fire Prevention Regulations Appeals Board reversed McDonald's April 16, 20022 order to correct. McDonald did not appeal this decision.

132.    Despite the fact that he had not inspected the Home in roughly one year, McDonald issued another order on or about January 13, 2023.

133.    McDonald's January 13, 2023 order states it is based on his observations from the March 23, 2021 inspection and the facts presented at the hearing before the Fire Prevention Regulations Appeals Board.

134.    The April 6, 2022 order and the January 13, 2023 order made the same allegations about the same devices and only cite to different provisions of the code that the Home's conditions supposedly violate.

135.    Moreover, the code provisions cited in the January 13, 2023 order had been argued by McDonald to the Fire Prevention Regulations Appeals Board already during the first appeal to the Board.

**Oxford Illegally Singles Out Plaintiffs To Prevent Them From
Participating In The Local Political Process**

136.    Motivated, in part, by their experiences with Town officials described above,
Plaintiffs decided to develop warrant articles that would be acted on by Oxford voters at the next
Town Meeting.

137.    The Town Meeting warrant articles were designed to increase oversight and
accountability of the Town, its officials, and its various departments.

138.    Pursuant to M.G.L. c. 39 §10, the Board of Selectmen are required to include a
petitioned article in the warrant of a special town meeting if it is supported by the signatures of at
least 100 registered voters.

139.    Plaintiffs expended significant time and effort, over 120 hours, to obtain the
required signatures, speaking with hundreds of town residents.

140.    On or about September 7, 2021, Plaintiffs delivered petitions with over 200
signatures from registered Town voters supporting the Articles for consideration at the next
Town meeting scheduled for October 2021.

141.    The Registrar of Voters verified that each petition was supported by the signatures
of more than 100 Oxford voters and the signatures were gathered and the petitions were
submitted while the warrant for the Town Meeting was open.

142.    Callahan intercepted Plaintiffs' petitions after they were submitted to the Town
and illegally withheld them from the Town Meeting.

143.    Around the same time, petitions submitted by other Oxford  residents were placed
in the warrant of the next Town Meeting following their submissions.

144.     In addition to the petitioned Town Meeting warrant articles, throughout 2021 and continuing thereafter, Plaintiffs exercised their rights secured by the first amendment to the U.S. Constitution in an assortment of ways, including but not limited to:

   a.     filing complaints with government entities;
   b.     campaigning for public office in the Town of Oxford;
   c.     video recording open meetings of Oxford public bodies;
   d.     participating in public discourse on matters of public concern;
   e.     Requesting and disseminating public records; and,
   f.     Litigation appealing the Town's baseless administrative orders.

145.     Beginning in September 2021 and continuing through the filing of this Complaint, Plaintiffs' first amendment activities in Oxford became fervent, including but not limited to:

   a.     On or about September 7, 2021 Plaintiffs served Town of Oxford with a demand letter pursuant to the Massachusetts Tort Claims Act M.G.L. c. 258 §4. This demand letter put the Defendants on notice of the present litigation.
   b.     On or about September 16, 2021 Plaintiffs submitted the first of several complaints that Town public bodies violated the Open Meeting Law.
   c.     On or about September 21, 2021 the Plaintiffs video recorded a highly contentious open meeting of the Oxford Board of Selectmen. This video became publicly available and featured by major news outlets resulting in a public outcry.
   d.     On or about September 22, 2021 Plaintiff King pulled nomination papers to run in an Oxford special election for the position of Selectman.

146.     Plaintiffs fervent exercise of their first amendment rights, was met with a similarly fervent increase in retaliatory acts by the Defendants and other unnamed agents of the Town of Oxford. The 'whisper campaign' orchestrated by Defendants became a 'shouting campaign'.

147.     The February 10, 2022 inspection was conducted, in part, to further this campaign to harass Plaintiffs.

148.     For instance, Callahan adopted a policy of making all photos and records of the Plaintiffs' Home publicly available, despite these materials being exempt from the public records

law, M.G.L. c. 4 § 7(26)(c), as "materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy."

149.    At the same time Callahan instituted this policy concerning records concerning Plaintiffs and their Home, the Town redacted records concerning other individuals prior to being released to the public, purportedly on the same exemption to the public records law, M.G.L. c. 4 § 7(26)(c), even where the privacy interest of any specifically named individual was de minimus.

150.    Defendants also singled Plaintiffs out during public discussions.

151.    For instance, McDonald, dressed in his official uniform and introducing himself as the Fire Chief, announced on the floor of Town Meeting in May 2023 during a budgetary discussion that Plaintiff King has "active litigation against this Town" and "code enforcement issues".

152.    McDonald then repeated these statements on Facebook.

153.    At the same Town Meeting, a member of Oxford's Board of Selectman brought an article to Town Meeting on behalf of unnamed individuals, which sought to prohibit any person that is suing the Town from running for town office in an election.

154.    Because Defendants had so widely publicized the existing litigation between Plaintiffs and the Town, Oxford residents easily understood that to the article was "targeted" at Plaintiff King to "pressure" him "to withdraw his litigation as retaliation."

155.    Upon information and belief the article was at the direction and behest of the Defendants to further intimidate Plaintiffs, and without any other lawful or legitimate purpose.

156.    Defendants, or individuals acting on their behalf or in concert with them, created pseudonymous Facebook profiles for the purpose of taunting Plaintiffs and sharing their personal information online.

157.    These pseudonymous profiles were readily distinguishable by their characteristics, such as:

   a.  using names that do not correspond to any residents of Oxford identifiable through publicly available information;

   b.  using profile photos that do not show an identifiable person, but instead show things such as cats or landscapes; and,

   c.  the recent creation of the profile.

158.    The pseudonymous profiles revealed facts known only to the Defendants, and upon information and belief, they are controlled or directed by Callahan and McDonald and/or those working in concert with them.

159.    Callahan and McDonald flaunted their connection with these profiles, such as by disclosing the number of pages of a legal brief which Plaintiffs served on the Town only a few days prior. At the time this information was disclosed, it was not publicly available and was known only to Town Counsel, Callahan, and Court staff.

160.    The profiles taunted the Plaintiffs about their litigation with the Town, such as taking joy in how much of the Plaintiffs' time and money was taken up by their appeals of the Defendants' administrative orders and criticizing them for continuing those appeals.

161.    Further, the profiles disclosed details about Plaintiffs' personal lives, encouraged others to join the harassment campaign against Plaintiffs, which included encouraging community members to dig up details about Plaintiffs' private lives through records requests to the Town, and damaged the reputation of the Plaintiffs in the community by claiming that Plaintiffs "hate oxford" and that "they are wasting taxpayer dollars". These statements were then repeated by members of the community.

162.     As a result of Callahan's policy of releasing Plaintiffs' private information, records were given to individuals who are not named in this case, who then posted the information on Facebook. These records included:

a. Plaintiffs names and address; and,
b. photos of orders falsely alleging animal abuse and the existence of imminent safety hazards at the Home.

163.     The above information was shared via Facebook, including the Business's Facebook page in an attempt to cast aspersions about the Business and to negatively impact Plaintiffs' Business and their business relationships.

164.     Moreover, after years of persistent taunting, these pseudonymous profiles only ceased after Plaintiffs filed their original complaint in this action and Defendants received service of process in this case.

165.     Subsequently their comments about Plaintiffs were deleted, with many of the pseudonymous profiles disappearing from Facebook entirely; presumably due to being deleted by the users.

166.     During the December 12, 2022, meeting of the Oxford Board of Selectmen, the board members entered into an executive session pursuant to G.L. c. 30A, § 21(a)(1) to discuss an open meeting law complaint lodged by Mr. King, who had recently been elected to serve as a member of the Board of Selectmen.

167.     During the executive session, Callahan falsely accused Mr. King of releasing confidential information, engaging in a pattern of behavior endangering town staff members and making baseless accusations against staff members, and compromising the security and safety of staff members.

22

168.     Callahan also falsely accused Mr. King of publishing personal, private, and identifying information about her, including publicly describing her and/or her family's vehicles.

169.     By making these false and baseless accusations against Mr. King, Callahan attempted to harm his reputation and standing within the Oxford community and intimidate and retaliate against King.

### Selective Enforcement/Discrimination

170.     The Town, Lanciani, Banfill, Novak, Flynn, Sellers, Callahan, Warren-Dyment, Sterrett, and McDonald have singled out Plaintiffs and selectively enforced the Town's zoning bylaws against Plaintiffs while failing to enforce same zoning bylaws in the same manner against other Oxford residents.

171.     For instance, Lanciani determined that Plaintiffs were in violation of the by-laws because they had not received a special permit to possess reptiles at the Home.

172.     Upon information and belief, Lanciani has not threatened to shut down Pets Supplies Plus, a business that also sells reptiles and other animals in Oxford, despite the fact that, like Plaintiffs, Pets Supplies Plus, does not have a special permit and the bylaw applies to all districts in Oxford.

173.     Upon information and belief, no other Town officials have initiated other enforcement actions against Pet Supplies Plus.

174.     For over a year, Town officials have focused their inspectional and oversight power on Plaintiffs, while ignoring other open and obvious safety issues in Plaintiffs' neighborhood.

175.     While focusing on Plaintiffs' Business, Town officials have ignored genuine safety hazards, some of which they were forced to drive by on their way to Plaintiffs' property.

176.    On Plaintiffs' street alone there are homes:

    a.  with a non-compliant chimney that poses a significant fire hazard;

    b.  with an attached garage that is collapsing and covered with a tarp; and,

    c.  that has sat abandoned for as long as Plaintiffs have owned their home, with boarded up windows and other indicia of blight.

177.    The Town has allowed a property in the Town to act as an unpermitted landfill in a residential area, in violation of laws and regulations, despite numerous complaints from residents. This landfill subsequently caught fire.

178.    The Town has allowed a residential property to power an alternative home – a van- through extension cords and other wiring being used outdoors in violation of the State Fire Code, yet McDonald continues to claim the Plaintiffs' property is an "imminent safety hazard" due to use of, what he wrongly calls extension cords, despite the adverse ruling of the Fire Prevention Regulations Appeals Board.

179.    These conditions in Town, as stated in the preceding paragraphs, are easily visible from public rights of way or have been complained of by Oxford residents, and constitute open and obvious safety and health hazards.

180.    The Town's policy of retaliatory practices are selectively inflicted on others, while health and safety hazards are selectively ignored based on favoritism.

181.    Plaintiffs know of one resident how has repeatedly reported significant health and safety issues to Callahan and Sterrett. When the resident complained to Sterrett that nothing was being done to address the issues he reported, Sterrett replied that "maybe I should come down and look at your property."

182.    In another instance, a resident speaking at the microphone and on topic at Town Meeting was removed by the police for saying that Callahan was violating the Town Charter by not residing within the Town.

183.    Callahan received a very negative performance review from one Selectman, and subsequently that Selectman's husband was forced by Callahan to end his plowing contract with the Town.

184.    Plaintiffs' will seek their attorneys' fees and costs if and when they prevail, which are recoverable pursuant to 42 U.S.C. § 1988, M.G.L. c. 12 § 11I, and  M.G.L. c. 231 § 6F.

<u>COUNT I</u>
(42 U.S.C. § 1983 – Illegal Search and Seizure – Lanciani, Novak, Flynn, Banfill, Sellers, Callahan, Sterrett, and McDonald, each in their individual and official capacities, and Town of Oxford)

185.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

186.    At all times subject to this complaint, Plaintiffs had a right to be secure from unreasonable searches of their Home as secured under the Fourth Amendment of the U.S. Constitution.

187.    In the manner described more fully above, Lanciani, Novak, Flynn, Banfill, and Sellers, individually, jointly, and in conspiracy with each other and with others, as well as under color of law, obtained and executed an unlawful administrative search warrant and entered and photographed Plaintiffs' Home, in violation of Plaintiffs' rights secured by the Fourth Amendment and due process clause of the Fourteenth Amendment to the U.S. Constitution.

188.    This administrative warrant was obtained without adherence to requirements of law, and through false and misleading material statements and omissions sworn to by affidavit by Lanciani, and with the assistance of Novak.

189.    Lanciani intentionally crafted these falsities knowing he did not truly have cause for an administrative warrant. Had Lanciani stated the facts truthfully and accurately as they were known to him at that time, the affidavit would not have provided any cause of the administrative warrant.

25

190.     Additionally, the administrative warrant failed to state reasonable limits tied to the supposed purpose of the search, or identify the purpose, place, and objects to be searched with sufficient specificity and limits authorized by law, and is invalid on its face.

191.     Additionally, Lanciani, Novak, Flynn, Banfill, and Sellers exceeded the scope of the administrative warrant by executing a general search of Plaintiffs' entire home, entering areas unrelated to suspected code violations, and taking photographs which do not depict alleged code violations.

192.     Lanciani, Novak, Flynn, Banfill, and Sellers undertook the conduct described in this count while in possession of knowledge and evidence that the administrative warrant was not lawfully issued, and knew or should have known, that their actions set forth in this Count was unlawful.

193.     Moreover, Lanciani, Novak, Flynn, Banfill, and Sellers took photographs of Plaintiffs Home which do not depict alleged code violations and were not authorized by the administrative warrant.

194.     Additionally, Defendants caused these unlawfully obtained photographs to be published and publicly available.

195.     As a proximate and foreseeable result of Defendants' conduct, Plaintiffs suffered injuries as described in this Complaint.

196.     Plaintiffs' injuries were caused by agents and employees of the Defendant Town of Oxford, including but not limited to the Defendants named in this Count, who acted pursuant to the policies, practices, and customs of the Defendant Town of Oxford, as well as by the actions of final policymaking officials for Defendant Town of Oxford.

197.   Plaintiffs demand judgment against Defendants for damages in an amount to be determined by a jury.

<u>COUNT II</u>
(42 U.S.C. § 1983 - Equal Protection Clause Violation - All defendants)

198.   Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

199.   The Fourteenth Amendment to the U.S. Constitution guarantees Plaintiffs equal protection of the law.

200.   Plaintiffs are members of a protected class.

201.   In the manner described more fully above, Defendants, individually, jointly, and in conspiracy with each other and with others, as well as under color of law, singled Plaintiffs out due to their status as members of a protected class in violation of their right to equal protection of the law.

202.   Upon learning the Plaintiffs are members of a protected class, Defendants initiated an adverse and unreasonable campaign against Plaintiffs in the manner set forth in this Complaint.

203.   By this campaign, Defendants singled out the Plaintiffs, and did not visit similar treatment upon other similarly situated individuals, nor individuals who are distinguishable from the Plaintiffs by genuinely creating and maintaining hazards, nuisances, and code violations of which the Defendants were aware.

204.   Moreover, there is no reasonable justification for Defendants conduct toward the Plaintiffs, nor for the disparity in treatment between the Plaintiffs and others that are similarly situated.

205.    Defendants have taken no enforcement actions against other businesses within the Town that sell reptiles without a special permit, nor against other residences for which the Town has received complaints about open and obvious code violations.

206.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and for the purpose of violating the Plaintiffs' rights or with reckless indifference to those rights.

207.    As a proximate and foreseeable result of Defendants' conduct, Plaintiffs suffered injuries as described in this Complaint.

208.    Plaintiffs' injuries were caused by agents and employees of the Defendant Town of Oxford, including but not limited to the Defendants named in this Count, who acted pursuant to the policies, practices, and customs of the Defendant Town of Oxford, as well as by the actions of final policymaking officials for Defendant Town of Oxford.

209.    WHEREFORE, Plaintiffs demand judgment against Defendants for damages together with costs and interest thereon.

<u>COUNT III</u>
(42 U.S.C. § 1983 - Violation of First Amendment by Retaliation – Defendants Lanciani, Novak, Flynn, Banfill, Sellers, Callahan, Warren-Dyment, Sterrett, McDonald, each in their official and individual capacities, and Town of Oxford)

210.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

211.    At all times subject to this complaint, Plaintiffs had a right to free speech, and to petition the government to redress grievances as secured by the First Amendment to the U.S. Constitution.

212.    Plaintiffs had the right to lodge complaints against municipal officials to their elected representatives on the Oxford Board of Selectmen, petition the Town Meeting, petition

the Courts, participate in public discourse, and engage in other protected activities as set forth in this Complaint.

213.    Defendants, individually, jointly, and in conspiracy with one another, as well as under color of law, targeted Plaintiffs in retaliation for exercising their first amendment rights.

214.    Defendants' conduct as set forth in this Complaint was selectively inflicted on the Plaintiffs, and not upon other similarly situated individuals, nor individuals who are distinguishable from the Plaintiffs by genuinely creating and maintaining hazards, nuisances, and code violations of which the Defendants were aware.

215.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and for the purpose of violating the Plaintiffs' rights or with reckless indifference to those rights.

216.    Moreover, a person of ordinary firmness subjected to Defendants' conduct would cease to exercise their first amendment rights rather than continue to be targeted.

217.    As a proximate and foreseeable result of Defendants' conduct, Plaintiffs suffered injuries as described herein.

218.    Plaintiffs' injuries were caused by agents and employees of the Defendant Town of Oxford, including but not limited to the Defendants named in this Count, who acted pursuant to the policies, practices, and customs of the Defendant Town of Oxford, as well as by the actions of final policymaking officials for Defendant Town of Oxford.

219.    WHEREFORE, Plaintiffs demand judgment against Defendants for damages together with costs and interest thereon.

COUNT IV
(42 U.S.C. § 1983 - Violation of First Amendment – Defendants Callahan in her official and
individual capacities, and Town of Oxford)

220.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

221.    At all times subject to this complaint, Plaintiffs had a right to petition the
government to redress grievances as secured by the First Amendment to the U.S. Constitution.

222.    Plaintiffs had the right to lodge complaints against municipal officials to their
elected representatives on the Oxford Board of Selectmen.

223.    In the manner described in this Complaint, Callahan, under color of law,
obstructed and prevented Plaintiffs from exercising their first amendment right to petition.

224.    Callahan, by her actions, intentionally obstructed Plaintiffs' from petitioning the
Selectmen to redress their grievances in response to Lanciani's conduct toward Plaintiffs.

225.    Plaintiffs fulfilled all requirements to have their articles included in the warrant
for the October 2021 Town Meeting, so that they could be considered and voted on at the Town
Meeting.

226.    Pursuant to G.L. c. 39 § 10 Plaintiffs articles were mandated to be included in the
warrant for the October 2021 Town Meeting.

227.    Callahan intercepted Plaintiffs' articles and by her actions intentionally prevented
them from being included in the Town Meeting warrant.

228.    Callahan violated Plaintiffs' rights secured by the First Amendment by depriving
them their right to petition the government.

229.    As a proximate and foreseeable result of Defendants' conduct, Plaintiffs suffered
injuries as described herein.

230.    Callahan is a final policymaking official for Defendant Town of Oxford, and acted pursuant to the policies, practices, and customs of the Defendant Town of Oxford. WHEREFORE, Plaintiffs demand judgment against Defendants for damages together with costs and interest thereon.

<u>COUNT V</u>
(28 U.S.C. § 1983 Substantive Due Process - All defendants)

231.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

232.    Plaintiffs have the right, secured by the Fourteenth Amendment to the U.S. Constitution not to be deprived of their interests in life, liberty, or property.

233.    By and through their actions, Defendants fraudulently obtained a search warrant for the Home and purported to conduct an administrative search for purported violations of various state and municipal codes.

234.    As a result of these searches, Defendants, without cause, interfered with Plaintiffs' business, ordered them to cease and desist Business operations, and ordered them to remove all bearded dragons from the Home.

235.    Defendants took actions to harass Plaintiffs based on Plaintiffs sexual orientation and their decision to petition their government.

236.    Defendants misconduct set forth in this Complaint shocks the conscience.

237.    As proximate and foreseeable result of Defendants conduct, Plaintiffs suffered injuries as described herein.

238.    Plaintiffs' injuries were caused by agents and employees of the Defendant Town of Oxford, including but not limited to the Defendants named in this Count, who acted pursuant to the policies, practices, and customs of the Defendant Town of Oxford, as well as by the actions of final policymaking officials for Defendant Town of Oxford.

31

239.    WHEREFORE, Plaintiffs demand judgment against Defendants for damages together with costs and interest thereon.

## COUNT VI
(Violation of Article 14 of the Massachusetts Declaration of Rights – Town of Oxford, Lanciani, Novak, Flynn, Banfill, Sellers, Callahan, Sterrett, and McDonald, each in their official and individual capacities.)

240.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

241.    At all times subject to this complaint, Plaintiffs had a right to be secure from unreasonable searches of their Home as secured under Article 14 of the Declaration of Rights.

242.    Defendants, violated Plaintiff's rights under Article 14 by:

a.  Entering their Home using an invalid warrant obtained through a fraudulent affidavit;
b.  Exceeding the scope of the Administrative Warrant;
c.  Entering sensitive and private areas of the Home; and,
d.  Taking photographs of sensitive and private areas of the Home.

243.    As proximate and foreseeable result of Defendants' conduct, Plaintiffs suffered injuries as described herein.

244.    Plaintiffs' injuries were caused by agents and employees of the Defendant Town of Oxford, including but not limited to the Defendants named in this Count, who acted pursuant to the policies, practices, and customs of the Defendant Town of Oxford, as well as by the actions of final policymaking officials for Defendant Town of Oxford.

245.    Plaintiffs demand judgment against Defendants for damages in an amount to be determined by a jury.

## COUNT VII
(Article 1 Massachusetts Declaration of Rights – Town of Oxford, Lanciani, Novak, Flynn, Banfill, Sellers, Callahan, Warren-Dyment, and McDonald, each in their official and individual capacities)

246.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

247.    Plaintiffs are members of a protected class.

32

248.    At all times subject to this complaint, Plaintiffs were entitled to equal protection and application of the law.

249.    At all times subject to this complaint, Plaintiffs were deprived the full opportunity and access of laws.

250.    Defendants singled Plaintiffs out for extraordinary oversight and enforcement of Oxford's bylaws, state law, and various administrative codes.

251.    Defendants have treated Plaintiffs differently than others who are similarly situated, without any reasonable justification.

252.    Defendants have attempted to shut down Plaintiffs' Business purportedly because Plaintiffs do not have a special permit to house reptiles despite the existence of other businesses within the Town that also sell pets without a special permit.

253.    Defendants have attempted to shut down Plaintiffs Business for various health code violations while choosing not to enforce the health code at other residences for which the Town has received several complaints about open and obvious health code violations.

254.    As a proximate and foreseeable result of Defendants' conduct, Plaintiffs suffered physical and emotional injuries, and suffered humiliation, embarrassment, and severe emotional distress, as well as loss of income.

255.    Plaintiffs' injuries were caused by agents and employees of the Defendant Town of Oxford, including but not limited to the Defendants named in this Count, who acted pursuant to the policies, practices, and customs of the Defendant Town of Oxford, as well as by the actions of final policymaking officials for Defendant Town of Oxford.

256.    WHEREFORE, Plaintiffs demand judgment against Defendants for damages together with costs and interest thereon.

33

<u>COUNT VIII</u>
(Violation of Article 19 of the Massachusetts Declaration of Rights -Callahan in her official
and individual capacities, and Town of Oxford)

257.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

258.    At all times subject to this complaint, Plaintiffs had a right to petition the

government to redress grievances as secured under Article 19 of the Massachusetts Declaration

of Rights.

259.    Plaintiffs had the right to lodge complaints against municipal officials to their

elected representatives on the Oxford Board of Selectmen.

260.    Plaintiffs had the right to have a warrant duly endorsed by the requisite number of

Oxford residents be considered at Town Meeting.

261.    Plaintiffs complied with all requirements to have their articles considered and

voted on at Town Meeting.

262.    Defendants violated Plaintiffs' rights secured by Article 19 of the Massachusetts

Declaration of Rights by depriving them their right to be heard and to petition their government.

263.    As a proximate and foreseeable result of Defendants' conduct, Plaintiffs suffered

injuries as described herein.

264.    Callahan is a final policymaking official for Defendant Town of Oxford, and

acted pursuant to the policies, practices, and customs of the Defendant Town of Oxford.

265.    WHEREFORE, Plaintiffs demand judgment against Defendants for damages

together with costs and interest thereon.

<u>COUNT IX</u>
(Trespass – Town of Oxford, Lanciani, Novak, Flynn, Banfill, Sellers,
Sterrett, and McDonald, each in their official and individual capacities)

266.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

267.    At all times subject to this complaint, Plaintiffs had title to the House.

34

268.    At all times subject to this complaint, Plaintiffs had a right to restrict access to the Home.

269.    At all times subject to this complaint, Plaintiffs asserted their right to restrict access to the Home by Defendants Lanciani, Novak, Flynn, Banfill, Sellers, Sterrett and McDonald absent a valid search warrant.

270.    The administrative search warrant obtained by Lanciani which purportedly granted Defendants Lanciani, Novak, Flynn, Banfill, and Sellers their authority to enter the Home was obtained fraudulently.

271.    Even if the administrative search warrant was legitimately secured and valid, Defendants Lanciani, Novak, Flynn, Banfill, and Sellers exceeded the scope of the administrative search warrant by entering areas of the Home objected to by Plaintiffs and not subject to search by the town Defendants.

272.    The invasion into the Plaintiffs' Home and private areas was without legal right and occurred repeatedly, despite Plaintiffs' objections ,and the photographs of those searches were made public record.

273.    As a proximate and foreseeable result of Defendants' conduct, Plaintiffs suffered injuries as described herein.

274.    Plaintiffs' injuries were caused by agents and employees of the Defendant Town of Oxford, including but not limited to the Defendants named in this Count, who acted pursuant to the policies, practices, and customs of the Defendant Town of Oxford, as well as by the actions of final policymaking officials for Defendant Town of Oxford.

275.    WHEREFORE, Plaintiffs demand judgment against Defendants for damages together with costs and interest thereon.

<u>COUNT X</u>
(Invasion of Privacy- Town of Oxford, Lanciani, Novak, Flynn, Banfill,
Sellers, Callahan, Sterrett, and McDonald, each in their official and individual capacities)

276.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

277.    The above-listed defendants used their status as Town officials to gain access to the Home over Plaintiffs' objections.

278.    Defendants had no legitimate reason for performing a general search of Plaintiffs' Home, or photographing Plaintiffs' Home.

279.    The above-identified defendants entered and photographed the Home on multiple occasions without justifiable cause to do so.

280.    Plaintiffs expressly told these defendants to limit the search of the Home to those locations that needed to be inspected for a legitimate reason or that were identified in the administrative search warrant, to not photograph their Home, and to keep photographs of Plaintiffs' Home private.

281.    Defendants intentionally ignored Plaintiffs' rights and requests, repeatedly performed general searches of Plaintiffs' Home, repeatedly took photographs throughout Plaintiffs' Home, and repeatedly published those photographs publicly.

282.    Defendants' conduct constitutes an unreasonable, substantial and serious interference with the Plaintiffs' right to privacy protected by G.L. c. 214, § 1B.

283.    As a direct and proximate cause of Defendants' actions and statements, Plaintiffs have suffered mental pain and suffering, emotional distress, humiliation, embarrassment, and subjected them to public ridicule.

284.    Plaintiffs' injuries were caused by agents and employees of the Defendant Town of Oxford, including but not limited to the Defendants named in this Count, who acted pursuant

to the policies, practices, and customs of the Defendant Town of Oxford, as well as by the actions of final policymaking officials for Defendant Town of Oxford.

285.   WHEREFORE, Plaintiffs demands judgment against Defendants for damages together with costs and interest thereon.

COUNT XI
(Defamation- Town of Oxford, Lanciani, Novak, Flynn, Banfill, Sellers, Callahan, Sterrett, and McDonald, each in their official and individual capacities)

286.   Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

287.   Defendants' above-described conduct, consisting of oral and written statements as well as their conduct, damaged the character of Plaintiffs and caused them to be viewed with suspicion and constituted defamation against Plaintiffs.

288.   In the manner described more fully above, Defendants, individually, jointly, and in conspiracy with one another, executed a campaign of publishing false written and oral statements about the Plaintiffs, their Home, Business, and personal lives.

289.   These statements caused the Plaintiffs to be viewed with suspicion, and damaged and discredited the Plaintiffs' reputations, and that of their Business.

290.   Moreover, Defendants published false statements of such severity that they are presumed to have resulted in harm to the Plaintiffs, including but not limited to claiming that Plaintiffs, committed crimes and other violations of law or engaged in immoral conduct, would spread salmonella throughout the Town, were unprofessional or unfit in the operation of their Business, were a danger to the public, and lived in an unsanitary and dangerous manner.

291.   Defendants continued to publish and repeat these false statements orally and in writing even after plaintiffs prevailed in overturning Defendants accusations in official proceedings, or after their co-conspirators admitted the accusations were false.

292.     Defendants continued this conduct in open meetings, meetings of the Board of Selectmen, and Town Meeting, using these Town events to continue defaming the Plaintiffs.

293.     Moreover, Defendants spread these false statements through the internet using false names to conceal their identity.

294.     Defendants published the false written and oral statements set forth in this Complaint knowing that they were false, or with reckless disregard for the truth, in furtherance of or complicit with the vindictive campaign Defendants carried out as also set forth in this Complaint.

295.     As a direct and proximate cause of Defendants' false and injurious statements, Plaintiffs have suffered mental pain and suffering, emotional distress, humiliation, and embarrassment.

296.     As a direct and proximate cause of Defendants' statements, Plaintiffs' business suffered as they were unable to carry on with the normal sale of bearded dragons.

297.     Plaintiffs' injuries were caused by agents and employees of the Defendant Town of Oxford, including but not limited to the Defendants named in this Count, who acted pursuant to the policies, practices, and customs of the Defendant Town of Oxford, as well as by the actions of final policymaking officials for Defendant Town of Oxford.

298.     WHEREFORE, Plaintiffs demands judgment against Defendants for damages together with costs and interest thereon.


### COUNT XII
(Defamation – Defendant Callahan in her official and individual capacities, and Town of Oxford)

299.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

300.     During the December 12, 2022, Board of Selectmen's meeting, Callahan accused Mr. King of releasing confidential information, engaged in a pattern of behavior that endangered

Oxford's staff members by compromising their safety and security, and that he publicly disclosed personal, private information about her with ill intentions.

301.    Callahan's statements about Mr. King are false, devoid of any factual basis, and defamatory.

302.    Callahan's statements were intended to cause, and did cause, damage to Mr. King's reputation and to subject him to public ridicule and contempt within the Oxford community.

303.    Callahan intentionally made these statements knowing that they were false and that they would damage Mr. King.

304.    As a direct and proximate cause of Defendants' false and injurious statements, Plaintiffs have suffered mental pain and suffering, emotional distress, humiliation, and embarrassment.

305.    Callahan is a final policymaking official for Defendant Town of Oxford, and acted pursuant to the policies, practices, and customs of the Defendant Town of Oxford.

306.    WHEREFORE, Plaintiffs demands judgment against Defendants for damages together with costs and interest thereon.

<u>COUNT XIII</u>
(Abuse of process – Town of Oxford, Lanciani, Novak, Flynn, Banfill, Sellers, Callahan, Warren-Dyment, Sterrett and McDonald, each in their official and individual capacities)

307.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

308.    At all times relevant to the events set forth in this complaint, Plaintiffs had a right to be secure from unreasonable searches of their Home, a right to privacy, and a right not to be harassed and to be left alone.

309.     Defendants used their positions of power to illegally interfere with Plaintiffs' rights.

310.     In the manner set forth in this Complaint, Defendants caused process to issue, including but not limited to an administrative search warrant, granted discovery, and proceedings in Court and before administrative agencies.

311.     Defendants misused these processes to write baseless orders, invade the Plaintiffs privacy, intimidate, threaten, and harass the Plaintiffs, and cause new Court proceedings to open to re-litigate issues improperly.

312.     Defendants abused their powers by repeatedly issuing citations without cause or facts to support their issuance, and by conducting multiple searches and/or inspections for an ulterior and illegitimate purpose – to harass and intimidate Plaintiffs, gain an unconscionable advantage in litigation, and force them to leave the Town.

313.     As a proximate and foreseeable result of Defendants' conduct, Plaintiffs suffered injuries as described herein.

314.     Plaintiffs' injuries were caused by agents and employees of the Defendant Town of Oxford, including but not limited to the Defendants named in this Count, who acted pursuant to the policies, practices, and customs of the Defendant Town of Oxford, as well as by the actions of final policymaking officials for Defendant Town of Oxford.

315.     WHEREFORE, Plaintiffs demand judgment against Defendants for damages together with costs and interest thereon.

<u>COUNT XIV</u>
(Massachusetts Civil Rights Act - All defendants)

316.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

317.     Plaintiffs have the right to be safe and secure in their persons.

40

318.    Plaintiffs have the right to be safe and secure in their Home.

319.    Plaintiffs have the right to petition their local government.

320.    By and through their actions, Defendants fraudulently obtained a search warrant for the Home and purported to conduct an administrative search for violations of various state and municipal codes.

321.    Defendants singled Plaintiffs out for enforcement of these various state and municipal codes based upon their sexual orientation.

322.    Defendants unlawfully refused to place warrants spearheaded by Plaintiffs on the agenda for discussion and action at Town Meeting.

323.    Defendants retaliated against Plaintiffs for their activism and willingness to petition their local government.

324.    As a result, Defendants, without cause, interfered with Plaintiffs' business, ordered them to cease and desist operating it from their Home, sullied or attempted to sully Plaintiffs' reputations, and retaliated against them for engaging in political activities.

325.    As proximate and foreseeable result of Defendants conduct, Plaintiffs suffered injuries as described herein.

326.    Plaintiffs' injuries were caused by agents and employees of the Defendant Town of Oxford, including but not limited to the Defendants named in this Count, who acted pursuant to the policies, practices, and customs of the Defendant Town of Oxford, as well as by the actions of final policymaking officials for Defendant Town of Oxford.

327.    WHEREFORE, Plaintiffs demand judgment against Defendants for damages together with costs and interest thereon.

COUNT XV
(Intentional Infliction of Emotional Distress- All defendants)

328.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

329.     The conduct of Defendants constituted intentional infliction of emotional distress upon Plaintiffs.

330.     As a proximate and foreseeable result of Defendants' conduct, Plaintiffs suffered physical and emotional injuries, and suffered humiliation, embarrassment, and severe emotional distress, as well as loss of income.

331.     Plaintiffs' injuries were caused by agents and employees of the Defendant Town of Oxford, including but not limited to the Defendants named in this Count, who acted pursuant to the policies, practices, and customs of the Defendant Town of Oxford, as well as by the actions of final policymaking officials for Defendant Town of Oxford.

332.     WHEREFORE, Plaintiffs demand judgment against Defendants for damages together with costs and interest thereon.

COUNT XVI
(Negligent Infliction of Emotional Distress- All defendants)

333.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

334.     The conduct of Defendants constituted negligent infliction of emotional distress upon Plaintiffs.

335.     Defendants knew or should have known that their actions would cause emotional distress, pain and suffering, mental anguish and embarrassment.

336.     As proximate and foreseeable result of Defendants conduct, Plaintiffs suffered injuries as described herein.

42

337.     Plaintiffs' injuries were caused by agents and employees of the Defendant Town of Oxford, including but not limited to the Defendants named in this Count, who acted pursuant to the policies, practices, and customs of the Defendant Town of Oxford, as well as by the actions of final policymaking officials for Defendant Town of Oxford.

338.     WHEREFORE, Plaintiffs demand judgment against Defendants for damages together with costs and interest thereon.

## COUNT XVII
### (Breach of Contract –Small)

339.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

340.     Defendant Robert Small entered into a contract with Plaintiffs to make certain improvements to their home.

341.     Plaintiffs paid Small and complied with their obligations of the contract.

342.     Small held himself out to Plaintiffs as an licensed contractor who could complete the work contracted within a reasonable amount of time and in a workmanlike manner.

343.     Small failed to complete the work for which he was contracted and paid to complete.

344.     As a proximate and foreseeable result of Small's conduct, Plaintiffs were damaged in an amount to be determined by a jury.

## COUNT XVIII
### (Violation of G.L. c. 265 §25 – Extortion - Small)

345.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

346.     Small, upon walking off the job, threatened to falsely accuse Plaintiffs of building code violations unless they pay him money to be quiet.

347.     When Plaintiffs refused, Small made a false report to the Town.

348.    Small made this false report with the intent to demean, harass, embarrass, and otherwise injure Plaintiffs.

349.    As proximate and foreseeable result of Small's conduct, Plaintiffs suffered injuries as described herein in an amount to be determined by a jury.

## COUNT XIX
### (Civil Conspiracy- All Defendants)

350.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

351.    Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to deprive the Plaintiffs of their constitutional rights, their privacy, economic benefits of operating a profitable business, and inflict other harms as set forth in this Complaint.

352.    In doing so, these co-conspirators colluded to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiffs of their Constitutional rights.

353.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity,.

354.    Defendants, using their positions of power and influence, worked in concert to engage in a pattern of harassing and bullying behavior intended to deprive Plaintiffs of their rights of privacy, intimidate them into closing their at-home business operations, deprive them of the economic benefits of operating a profitable business, and influence them to sell their Home and move out of Oxford.

355.    The misconduct described in this Count was objectively unreasonable, shocks the conscience, and was undertaken intentionally, with malice, and with reckless indifference to the rights of the Plaintiffs.

356.    Plaintiffs' injuries were caused by, among others, agents and employees of the Defendant Town of Oxford, including but not limited to the Defendants named in this Count, who acted pursuant to the policies, practices, and customs of the Defendant Town of Oxford, as well as by the actions of final policymaking officials for Defendant Town of Oxford.

357.    Defendants, using their individual and unique positions of power and influence, in concert with one another caused Plaintiffs to suffer injury as described herein.

*Relief*

WHEREFORE, Plaintiffs request that this Honorable Court:

(1)    Award the Plaintiffs compensatory damages from Defendants in an amount to be determined by a jury.

(2)    Award Plaintiffs punitive damages from the Defendants in an amount to be determined by a jury.

(3)    Award the Plaintiffs interest, costs and reasonable attorney's fees for bringing this action.

(4)    Award the Plaintiffs such other relief as this Court deems just, equitable, and appropriate.

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted

CASEY FLEMING, ROBERT KING, and
KEVIN CARBONNEAU

By their Attorney

_____

Tristan P. Colangelo (BBO# 682202)
Kerstein, Coren & Lichtenstein, LLP
60 Walnut Street, 4th Floor
Wellesley, MA 02481
781-997-1600
tcolangelo@kcl-law.com

Dated: November 9, 2023

## CERTIFICATE OF SERVICE

I, Tristan P. Colangelo, hereby certify that a true copy of the above document was served electronically upon the all attorneys of record for each other party on November 9, 2023, as a registered ECF participant.

_____

Tristan P. Colangelo