**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| CASEY FLEMING et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 4:23-cv-40081-MRG |
| | ) | |
| TOWN OF OXFORD et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>ORDER ON DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT</u>**

**GUZMAN, J.**

This case arises from a dispute between three homeowners in Oxford, Massachusetts—Plaintiffs Casey Fleming, Kevin Carbonneau, and Robert King—and the Town of Oxford. Plaintiffs operate an online business breeding and selling bearded dragons from their shared home. They allege that the Town subjected them to repeated home inspections and municipal orders to correct purported violations, amounting to a campaign of harassment.

Before the Court are two motions to dismiss [ECF Nos. 33, 36][1] the Amended Complaint. [ECF No. 19]. For the reasons set forth below, both motions to dismiss are **<u>GRANTED</u>**.

---

[1] ECF No. 33 is filed by Defendant Alison Novak; ECF No. 36 is filed by Defendants Town of Oxford, Robert Lanciani, Kathleen Flynn, Alfred Banfill, Kenneth Sellers, Laurent MacDonald, Rike Sterrett, Jennifer Callahan and Jennifer Warren-Dyment (collectively, with Defendant Novak, "Defendants").

## I.    BACKGROUND

### A.  Relevant Facts[2]

In June 2018, Plaintiffs Casey Fleming, Kevin Carbonneau, and Robert King (collectively, "Plaintiffs") purchased a home at 59 Quobaug Avenue in Oxford, Massachusetts (the "Home") and began operating an online business, HereBDragons, from the property. [Am. Compl. ¶ 1, ECF No. 19]. The business involves breeding and selling bearded dragons. [Am. Compl. ¶¶ 20–27]. The bearded dragons are bred and cared for on the property and sold online. [Id.]

In early 2021, Plaintiffs hired a contractor—Robert Small[3]—to perform renovations to the Home. [Id. ¶ 1]. In February of 2021, Small allegedly walked off the job angrily, directing "hateful rhetoric and homophobic slurs" at Plaintiffs whom Small understood to be "same-sex oriented adult males." [Id. ¶¶ 38–40]. Shortly thereafter, Small reported alleged health and safety violations at the Home to the Town of Oxford's Board of Health and Building Department. [Id. ¶¶ 42–48]. The Town claims that Small reported "unsanitary conditions . . . including insect infestation, the keeping and sale of exotic animals (bearded lizards), and other conditions dangerous to the health and safety of the occupants, general public, abutters and first responders, including but not limited to exposed electrical wire and electrical cords, as well as the presence of numerous space heaters

---

[2] The following background facts are taken primarily from the allegations in Plaintiffs' Amended Complaint, [Am. Compl., ECF No. 19] and are accepted as true for purposes of this motion. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (explaining that a reviewing court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)"). All plausible inferences are made in Plaintiff's favor. Id.

[3] Mr. Small was named as a defendant, and Plaintiffs filed proof of service of the original complaint. [ECF No. 5.] Mr. Small did not enter an appearance or otherwise respond to the Complaint, and Plaintiffs did not request entry of default pursuant to Rule 55(a). For ease of reference, the Court refers to Robert Small as "Mr. Small" or "Small."

and space lamps (believed to be for the lizards)." [Id. ¶ 76(a)]. Plaintiffs contend that Small's report was false. [Id. ¶ 1].

Following this report, Town officials initiated a series of inspections and enforcement actions. Defendant Robert Lanciani—then-Oxford Building Commissioner—sought to inspect the Home and indicated he would obtain an administrative search warrant when Plaintiffs declined his request for immediate access. [Id. ¶¶ 56–58]. Plaintiffs "amicably coordinated" Defendant Alison Novak's request for an inspection of the Home. [Id. ¶ 66]. During the inspection, Public Health Director Novak photographed portions of the Home and, at the conclusion of the inspection, reported to Plaintiffs that she had identified no code violations or evidence of an insect infestation. [Id. ¶¶ 68–70].

On March 23, 2021, Building Commissioner Lanciani obtained an administrative search warrant and, along with other Town officials, conducted an inspection of the Home. [Id. ¶¶ 80–85]. Plaintiffs contend that Town officials submitted an affidavit containing false testimony to obtain the search warrant. [Id. ¶¶ 76–77]. During the inspection, officials photographed the premises and subsequently issued multiple orders to correct alleged violations of zoning, health, fire, and electrical codes. [Id. ¶¶ 80–90].

The orders to correct included directives to remove animals from the property, and Plaintiffs were cited for alleged violations, including animal abuse. [Id. ¶¶ 98–100]. Plaintiffs appealed several of these orders through various administrative bodies, with mixed results—some orders were upheld while others were overturned. [Id. ¶¶ 101–135].

On February 10, 2022, Town officials re-inspected the Home. [Id. ¶ 106]. This inspection, according to Plaintiffs, was subject to a confidentiality agreement drafted by Plaintiffs' counsel restricting access to "private areas" of the Home and prohibiting photography there. [Id. ¶ 107].

During the inspection, Defendants entered and photographed "private spaces." [Id. ¶ 108]. Defendants denied knowledge of a confidentiality agreement and subsequently made the photographs publicly available. [Id. ¶ 110]. Plaintiffs do not explain the specific manner in which the photographs were published.

Following these inspections, Town officials issued additional orders to correct. [Id. ¶¶ 90–93, 111]. Plaintiffs continued to challenge these orders through administrative appeals, including proceedings before the Board of Health, Board of Electricians' Appeals, and Fire Prevention Regulations Appeals Board. [Id. ¶¶ 96–135]. Some of these enforcement actions were ultimately reversed on appeal, although additional orders were later issued. [Id.]

Separately, Plaintiffs engaged in local political activity, including submitting warrant articles for consideration at a Town Meeting and participating in public discourse regarding Town governance. [Id. ¶¶ 136–44]. Plaintiffs allege that at least one such submission was not included in the Town Meeting warrant. [Id. ¶ 142]. They further allege that Town officials publicly referenced their disputes with the Town during public meetings. [Id. ¶¶ 150, 151]. Plaintiffs also allege that unidentified individuals created pseudonymous social media accounts that shared information about Plaintiffs and their dispute with the Town. [Id. ¶¶ 156–58].

### B.  Procedural History

Plaintiffs brought this action on July 12, 2023, [ECF No. 1] and filed an amended complaint [ECF No. 19] on November 9, 2023. Defendant Allison Novak filed a motion to dismiss for failure to state a claim [ECF No. 33] on April 22, 2024. The remaining Defendants Banfill, Callahan, Flynn, Lanciani, McDonald, Sellers, Sterrett, Warren-Dyment, and the Town of Oxford filed a separate motion to dismiss for failure to state a claim [ECF No. 36] on April 24, 2024. Plaintiffs submitted their opposition to both motions for dismissal [ECF No. 42] on June 28, 2024.

## II.    LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). At the pleading stage, a plaintiff need not demonstrate that they are likely to prevail, but "[their] claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" García-Catalán v. United States, 734 F.3d 100, 102-03 (1st Cir. 2013) (quoting Iqbal, 556 U.S. at 678). When deciding a 12(b)(6) motion to dismiss, a court must "accept the truth of all wellpleaded facts and draw all reasonable inferences therefrom in the pleader's favor." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012) (citing Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006)). In determining whether a complaint has cleared the plausibility threshold, courts conduct a two-part, context-specific inquiry. First, the court must separate "'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" García-Catalán, 734 F.3d at 103 (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, the court must determine "whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)). Conducting this inquiry requires a court to draw on its "judicial experience and common sense." Iqbal, 556 U.S. at 679.

Although the Court's motion to dismiss inquiry is ordinarily limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice, In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003), the Court may consider certain documents the authenticity of which are not disputed by the parties, official public records, documents central

5

to Plaintiff's claim, and documents sufficiently referred to in the complaint. Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993) (collecting cases).

### III.   DISCUSSION

#### A.   Rooker-Feldman Doctrine

Defendant Novak argues that this Court does not have subject matter jurisdiction over this case due to the bar of the Rooker-Feldman doctrine.[4] [ECF No. 34, 9–10] The Supreme Court of the United States is the only federal court with jurisdiction to review a state court judgment. See 28 U.S.C. § 1257; see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292 (2005).   Under the Rooker-Feldman doctrine, a district court cannot exercise subject matter jurisdiction over an action brought by a party who lost in state court and who is "seeking review and rejection of that judgment" in a lower federal court. Exxon Mobil, 544 U.S. at 291. Instead, "the proper forum for challenging an unlawful state court ruling is the United States Supreme Court, on appeal of the highest state court's final judgment." Davison v. Gov't of Puerto Rico-Puerto Rico Firefighters Corps, 471 F.3d 220, 223 (1st Cir. 2006).   Litigants cannot "avoid the impact of the Rooker-Feldman Doctrine simply by recasting [their] claims in federal court as arising under the United States Constitution" where adjudications would require reviewing the merits of the state courts decision. Sinapi v. Rhode Island Bd. of Bar Examiners, 910 F.3d 544, 549 (1st Cir. 2018) (citing McKenna v. Curtin, 869 F.3d 44, 48 (1st Cir. 2017)).

Here, the Rooker-Feldman doctrine is inapplicable to Plaintiffs' claims because Plaintiffs do not complain of injuries caused by state court judgments. Rather, they challenge actions by municipal executive officials. The Rooker-Feldman doctrine "has no application to judicial review

---

[4] The term "Rooker-Feldman doctrine" is a shorthand reference to the Supreme Court's interpretation of 28 U.S.C. § 1257 in District of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

of executive action." <u>Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland</u>, 535 U.S. 635, 644 n.3 (2002).

### B. <u>Section 1983 Claims (Counts I through V)</u>

Pursuant to 42 U.S.C. § 1983 ("Section 1983"), Plaintiffs allege violations of their First, Fourth, and Fourteenth Amendment rights. <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 306 (1st Cir. 2008) (citation omitted) ("Section 1983 is a vehicle through which individuals may sue certain persons for depriving them of federally assured rights, such as the First Amendment's right to free speech or the Fourteenth Amendment's right to procedural due process."). To prevail on a Section 1983 claim, a plaintiff must show that defendants acted under the color of state law, and that their conduct deprived plaintiff of rights secured by the Constitution or by federal law. <u>Id.</u> (citing <u>Rodriguez-Cirilo v. Garcia</u>, 115 F.3d 50, 52 (1st Cir. 1997)). For the reasons set forth below, Plaintiffs' Section 1983 claims fail as a matter of law.

### 1. *Alleged Illegal Search and Seizure (Count I)*

Plaintiffs allege that Defendants Lanciani, Novak, Flynn, Banfill, Sellers, Callahan, Sterrett, McDonald, and the Town of Oxford "obtained and executed an unlawful administrative search warrant" (the "Warrant") in violation of the Fourth Amendment. [Am. Compl. ¶ 187].

The Fourth Amendment protects against unreasonable searches and seizures and provides that "no Warrants shall issue, but upon probable cause." U.S. CONST. AMEND. IV. The touchstone of the Fourth Amendment inquiry is "reasonableness," which is "determined by weighing the government's need for the search against the degree of intrusion upon individual privacy." <u>Rivera-Corraliza v. Morales</u>, 794 F.3d 208, 216 (1st Cir. 2015) (citation omitted).

In the context of administrative inspections, like the one challenged here, the probable cause requirement is applied more flexibly. Although a warrant is generally still required, probable

cause may be established by showing that reasonable administrative standards for conducting the inspection are satisfied, rather than by individualized suspicion of a violation. Camara v. Municipal Court, 387 U.S. 523, 538 (1967); Marshall v. Barlow's, Inc., 436 U.S. 307, 320–21 (1978); see also Rivera-Corraliza, 794 F.3d at 216. This reduced burden reflects the comparatively limited intrusion associated with regulatory inspections. See Montville v. Lewis, 87 F.3d 900, 903 (7th Cir. 1996) (citing Camara, 387 U.S. at 537). Accordingly, the relevant inquiry is whether the warrant application satisfied applicable administrative standards, not whether Defendants possessed traditional probable cause of wrongdoing.

Plaintiffs further allege that Defendants exceeded the scope of the Warrant by entering areas of the home "unrelated to suspected code violations" and taking photographs. [Am. Compl. ¶¶ 188–91]. Whether a search exceeds the scope of a warrant is determined "through an objective assessment of the circumstances surrounding the issuance of the warrant, the contents of the search warrant, and the circumstances of the search." United States v. Pimentel, 26 F.4th 86, 92 (1st Cir. 2022).

Applying that framework, the Amended Complaint fails to plausibly allege a Fourth Amendment violation. As to the circumstances surrounding issuance, Defendant Lanciani sought the March 23, 2021 Warrant after the Building Department received a complaint alleging "numerous health and safety" and "building code" violations at the property. [Am. Compl. ¶¶ 47–48]. The Amended Complaint contains no allegation that those suspected violations were confined to any particular portion of the Home.

As to the contents of the Warrant, it authorized Town officials to "observe and inspect any evidence of violations" and to "photograph and/or videotape any evidence of violations." [ECF

No. 34-2 at 1]. And as to the circumstances of the search, Plaintiffs allege only that Defendants inspected the home without excluding particular areas. [Am. Compl. ¶¶ 188–91].

Given the apparent breadth of the reported violations and the terms of the Warrant, the alleged search was not objectively unreasonable. "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found." United States v. Ross, 456 U.S. 798, 820–21 (1982); see also United States v. Leandry-Ocasio, No. 2:19-CR-00151-13, 2024 WL 229757, at *7 (E.D. Pa. Jan. 22, 2024) (quoting United States v. Ross, 456 U.S. 798, 820–821 (1982)). Where, as here, the Warrant was not expressly limited to discrete areas, the search permissibly extended throughout the Home.

Plaintiffs also allege that the Warrant was procured through a false affidavit. [Am. Compl. ¶¶ 76–77]. This claim is likewise unavailing. Plaintiffs themselves allege that the inspection was initiated after Small reported "numerous health and safety violations" to municipal authorities, and that this report prompted officials to inspect the property. [Am. Compl. ¶¶ 47–48, 51]. Even assuming the report turned out to be fabricated, the Amended Complaint does not plausibly allege that any Defendant knowingly or recklessly included false statements in the warrant application *that were necessary to the probable cause determination*. See Aponte Matos v. Toledo Davila, 135 F.3d 182, 187 (1st Cir. 1998) (explaining that a Fourth Amendment violation arises only where an affiant includes a knowingly or recklessly false statement material to probable cause) (citation and internal quotation marks omitted).[5] The Court is mindful of Plaintiffs' allegation that a Board of Health official searched the home prior to the Building Department's warrant application. [Am.

---

[5] The Court cannot disregard Plaintiffs' own factual allegations. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (citing Twombly, 550 U.S. at 556) (noting that "the court may not disregard properly pled factual allegations").

Compl. ¶ 74]. That circumstance does not alter the analysis. The two departments enforce distinct regulatory regimes, and nothing in the Amended Complaint plausibly suggests that any earlier Board of Health inspection (that was allegedly favorable for Plaintiffs) negated probable cause for the Warrant obtained by the Building Department.

In sum, the Amended Complaint fails to plausibly allege a departure from the administrative standards for obtaining warrants or that the search exceeded its scope. Accordingly, Defendants' motion to dismiss is **GRANTED** as to Count I.

### 2. *Alleged Equal Protection Clause Violation (Count II)*

Plaintiffs allege that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by initiating "an adverse and unreasonable campaign" against them after learning that Plaintiffs are members of a protected class. [Am. Compl. ¶¶ 198–208].

Equal protection claims typically arise where the government enacts or enforces a law or policy that draws a classification between groups of individuals. See Cook v. Gates, 528 F.3d 42, 61 (1st Cir. 2008). Here, Plaintiffs do not identify a specific statute, regulation, or formal classification at issue, nor do they clearly define the protected class to which they belong. Liberally construed, however, the Court understands Plaintiffs to allege that Defendants treated them differently based on their sexual orientation. [Am. Compl. ¶¶ 38–40, 198–209].

Where a governmental classification targets a suspect or quasi-suspect class, courts apply heightened scrutiny. Cook v. Gates, 528 F.3d at 61. The First Circuit, however, has held that classifications based on sexual orientation are subject to rational basis review. Id. at 61–62 (citing Romer v. Evans, 517 U.S. 620 (1996)). Under that standard, the challenged government action will be upheld so long as it is rationally related to a legitimate governmental interest and is not

10

arbitrary or irrational. See D'Angelo v. New Hampshire Supreme Court, 740 F.3d 802, 806 (1st Cir. 2014).

Applying this standard, Plaintiffs fail to plausibly allege an equal protection violation. The enforcement actions at issue—including inspections of the Home and the issuance of orders to correct alleged code violations—fall within Defendants' roles as municipal officials charged with protecting public health and safety. Ensuring compliance with health, safety, and zoning regulations constitutes a legitimate governmental interest. Plaintiffs' allegations do not support a reasonable inference that Defendants' actions were wholly arbitrary, irrational, or unrelated to that interest.

Accordingly, Defendants' motion to dismiss is **GRANTED** as to Count II.

### 3. *Alleged First Amendment Violations (Counts III and IV)*

Plaintiffs assert that Defendant Callahan and the Town violated their First Amendment right to petition the government. [Am. Compl. ¶¶ 220–30]. "The First Amendment protects the right of an individual to . . . petition his government for redress of grievances," but it "does not impose any affirmative obligation on the government to listen [or] to respond . . . ." Smith v. Ark. State Highway Emp., Loc., 441 U.S. 463, 464–65 (1979). Plaintiffs allege that, in his capacity as Town Manager, Defendant Callahan intercepted certain petitions and communications directed to municipal officials. [Am. Compl. ¶¶ 136–69, 224]. Accepting that allegation as true, Plaintiffs fail to state a constitutional violation. The First Amendment guarantees the right to petition; it does not require government officials to act on, respond to, or meaningfully consider such petitions. Smith, 441 U.S. at 464–65. Accordingly, Plaintiffs' allegations that Defendant Callahan failed to advance or respond to their submissions—even if framed as interference—do not, without more, plausibly establish a violation of the Petition Clause. To the extent Plaintiffs rely on alleged failures

to process or respond to their communications, such claims sound, if at all, in state or local law, not the First Amendment. The claim against Defendant Callahan and the Town therefore fails.

Plaintiffs also allege that multiple Defendants—Lanciani, Novak, Flynn, Banfill, Sellers, Callahan, Warren-Dyment, Sterrett, McDonald, and the Town—retaliated against them in violation of the First Amendment. [Am. Compl. ¶¶ 210–19]. "When a government actor retaliates against someone for exercising constitutionally protected First Amendment rights, that individual has a cognizable retaliation claim." Alston v. Town of Brookline, 308 F. Supp. 3d 509, 531 (D. Mass. 2018) (quoting Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 141 (1st Cir. 2016)). To state such a claim, a plaintiff must plausibly allege, among other elements, a causal connection between the defendant's retaliatory animus and a concrete injury that would deter a person of ordinary firmness from exercising First Amendment rights. See Nieves v. Bartlett, 587 U.S. 391, 399 (2019).

That causal connection is not plausibly alleged here. Plaintiffs point to the issuance of orders to correct following an inspection of their property, including directives concerning the removal of animals. [Am. Compl. ¶¶ 90–92]. But the Amended Complaint does not allege that any animals were actually removed, or that Plaintiffs were otherwise dispossessed of property as a result of the challenged conduct. Nor do Plaintiffs plausibly allege facts supporting a but-for causal link between any protected activity and the issuance of those orders, as opposed to the inspection itself and the conditions observed. Absent plausible allegations of a non-*de minimis* injury causally connected to retaliatory animus, Plaintiffs fail to state a First Amendment retaliation claim.

Accordingly, Defendants' motion to dismiss is **<u>GRANTED</u>** as to Counts III and IV.

#### 4. *Alleged Substantive Due Process Violation (Count V)*

Plaintiffs allege that Defendants violated their substantive due process rights under the Fourteenth Amendment. [Am. Compl. ¶¶ 231–39]. The Due Process Clause protects against certain government actions that deprive individuals of life, liberty, or property interests in a manner that is arbitrary or conscience-shocking. See County of Sacramento v. Lewis, 523 U.S. 833, 846–47 (1998). To state a substantive due process claim, a plaintiff must plausibly allege both (1) the deprivation of a protected life, liberty, or property interest, and (2) that the governmental conduct was so egregious as to "shock the conscience." See Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006).

The First Circuit has recognized that constitutional protection of property can encompass people's animals, such as "pet cats and dogs." Maldonado v. Fontanes, 568 F.3d 263, 272 (1st Cir. 2009). The key inquiry in a substantive due process claim is whether the "alleged misconduct "shocks the conscience." Id. (citing Espinoza v. Sabol, 558 F.3d 83, 87 (1st Cir. 2009) ("The substantive component of the Due Process Clause is violated by executive action 'when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." (citation omitted)).

The substantive due process claim alleged by Plaintiffs against the Defendants resembles those brought in Maldonado. 568 F.3d at 266–67. In that case, the local municipality assumed control of public housing complexes and enacted a "a pet policy, which prohibited the residents from having cats or dogs." Id. at 266. The defendants sent warnings to the residents that they were enacting this policy, and five days after sending notice, the defendants sent uniformed municipal employees and workers from an animal control company to remove the remaining pets. Id. The plaintiffs filed suit against the mayor and the local municipality for the policy, alleging the

unconstitutional seizure and inhumane killing of their pets from their homes. Id. The plaintiffs alleged that their animals were injected with an unknown substance, "slammed against the side of a van[,]" and if the animals survived being injected and slammed, they were "thrown to their deaths off a 50-foot-high bridge[.]" Id. at 267.

While the conduct of the defendants in Maldonado can certainly be viewed as "shocking the conscience" at first blush, the First Circuit noted that the Supreme Court is reluctant to find substantive due process violations unless the conduct was "intended to injure in some way unjustifiable by any government interest." Id. at 273 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) (quotation omitted)). The First Circuit did not reach a determination as to the whether the cruel enforcement of the policy violated the plaintiffs' Fourteenth Amendment protections due to a finding of qualified immunity, however the court did recognize that there was a "legitimate interest in restricting ownership of pet cats and dogs in public housing."[6] Id. at 273. Returning to the case at bar, for Plaintiffs to demonstrate a substantive due process violation, they must claim that the Defendants had an unjustifiable government interest when they issued a directive to remove the bearded dragons.

Plaintiffs' substantive due process claim must fail for two reasons: (1) they have not alleged a deprivation of a property interest that the Constitution forbids; (2) they have not shown the Defendants' actions were unjustified by a government interest.

First, Plaintiffs have not been deprived of "life, liberty, or property." U.S. CONST. AMEND XIV. Plaintiffs contend that Defendants violated their rights by inspecting the Home and issuing orders, including directives to remove animals from the property. [Am. Compl. ¶¶ 233–34]. But

---

[6] The court did not reach a decision as to the issue of whether the enforcement violated the Fourteenth Amendment, instead finding that the mayor was protected under qualified immunity. Maldonado, 568 F.3d at 273.

these allegations do not plausibly establish a deprivation of a protected interest. The Amended Complaint does not allege that the animals were in fact removed or that Plaintiffs were otherwise deprived of property or liberty. Absent a concrete deprivation, Plaintiffs fail to satisfy the threshold requirement of a substantive due process claim.

Second, even assuming a protected interest were implicated, the conduct plausibly alleged—municipal inspections and enforcement of health and safety regulations[7]—falls squarely within the scope of routine governmental action. A municipality and its officials have a legitimate interest in protecting public health and safety, including through home inspections and the issuance of orders to correct alleged code violations. Such conduct, without more, does not rise to the level of conscience-shocking behavior required to sustain a substantive due process claim. See County of Sacramento v. Lewis, 523 U.S. at 846.

Accordingly, Defendants' motion to dismiss is **GRANTED** as to Count V.

### C. State Law Claims (Counts VI through XIX)

The remaining claims arise under state-law causes of action. [Am. Compl. ¶¶ 240-357 (Counts VI–XIX)]. Federal district courts may decline to exercise supplemental jurisdiction over related state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Therefore, in the interest of comity and in recognition that federalism favors allowing Massachusetts courts to interpret and apply their own law, the Court declines to exercise supplemental jurisdiction over the remaining claims. See Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998) ("Needless decisions of state law should be avoided both as a

---

[7] Based on the Court's finding at the motion to dismiss stage that Plaintiffs failed to demonstrate constitutional violations related to the search and subsequent Town actions, Plaintiffs' harassment claims likewise fail to qualify as Substantive Due Process violations.

matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

Accordingly, Counts VI–XIX are **DISMISSED** without prejudice to refiling in state court.

## IV.     CONCLUSION

For the foregoing reasons stated, Counts I–V are **DISMISSED** with prejudice. Counts VI–XIX are **DISMISSED** without prejudice to refiling in state court.

**SO ORDERED.**

Dated: March 31, 2026

　/s/ Margaret R. Guzman　　
Margaret R. Guzman
United States District Judge

16